WI-LAN v. LG ELECTRONICS WI-LAN v. LG ELECTRONICS Mr. Cipiora, you may proceed. Thank you, Your Honor. Good morning. Good morning, Your Honor. As you know, Your Honor, this matter involves a repeal relating to a subpoena that was issued out of the Northern District of California. And the reason why the judge should be reversed in this case is because the enforcement of this subpoena, and in particular, the waiver that was imposed by the District Court, was done so without regard to the fact that there was no fairness evaluation conducted. Fairness is the hallmark, as you see in the cases we've identified, of an evaluation of a subpoena in this context. And the impact here is, if the fairness tests had been applied, the result would have been the opposite. Because there really is no legitimate dispute. How would the fairness argument apply when you have an express waiver? Fairness would apply just as it does in the Von Buehle case, which you see from the Second Circuit in the XYZ case. And fundamentally, it's described in Bitter Court. Was Von Buehle an implied waiver or express waiver? Express waiver. Well, there was express discussion by counsel with his client, extrajudicial, outside the context of a judicial proceeding in which it was disclosed, this communication. The fulcrum point is not this express implied. It really is judicial versus extrajudicial. If you look at the law, in 2008, Congress amended Federal Rule of Evidence 502 to include specifically a fairness distinction. Or an express waiver in 502. Well, you can call it express, but it's in the context of a judicial proceeding. That's right. Right. The 502 provision will cover an actual express of voluntary as well as an involuntary. Absolutely. And that's exactly the point. And your rationale is, well, if your adversary concedes that there is going to be a fairness inquiry with regard to an implied waiver, that's Bitter Court. So you're simply saying, what conceivable reason would you not have a fairness inquiry in an extrajudicial express waiver? Absolutely. Particularly in the context there where the impact, all the cases talked about, including Bitter Court, which has an express discussion in 2003 by Chief Judge Kaczynski, of the Sword and the Shield analysis. That's fundamentally what we're going at here, Judge Reyna. The question is whether or not there's use of this disclosure in an affirmative way in the case, putting it at issue affirmatively. Every single case you're going to read, whether there's any analysis of this, there's an issue of the state of mind, for example, in the Mendelson case, is an issue in the case. In this particular context, the plaintiff has not put at issue in any way, shape, or form the viewpoints of its counsel, which is what was disclosed in that letter in January of 2010. And for that reason, one applies the fairness principle here. There's nothing on the other side of the balance. From your adversary, you sort of get the rules of engagement lined up here, that we have Ninth Circuit law. We're supposed to apply Ninth Circuit law. Yes, sir. And Ninth Circuit law, at least with the pre-Bitteker, pre the footnote in Bitteker, right? Then if you look at Weil and the other cases, it sure looks like that if you have a breach of the attorney-client privilege, it goes to subject matter. The waiver would extend to subject matter? Yeah, subject matter. So the question is, how do we look at that body of law? And your adversary reminds us the wheel's been cited 500 and some odd times, you know, since 502. How can we be confident that the Ninth Circuit would agree with us if we were to agree with you? Well, there's two points. One, Weil was decided 30 years ago. Well, that doesn't make it bad law. No, it doesn't. But what it does say is the law is a policy. Repeatedly after 502 is enacted. And in 2003, the chief judge of this circuit, the Ninth Circuit, said in his footnote five that the law is unclear on this subject. It's not the express issue. It's not clear. So we know in 2003, which is 20 years later, this chief judge of this court is saying the law is unclear in this category. Point number one. The second point is in Weil, the reason why Weil is still valid is because Weil does a fairness analysis. If you look at Weil and how it's described, it very clearly says, it looks at the context,  It wasn't in court. It looks and evaluates the fairness to determine what the scope of waiver would be. It isn't whether there's a waiver, because we're not, in this context, for the sake of this argument, we're saying right now, if there was a waiver, the waiver's limited to the letter. That's the limit issue. Didn't we address this in Target Tech? And what applicability would you say that Target Tech has to this case? Target Tech was a non-presidential opinion, I think, for good reason. There wasn't much analysis done. They basically looked at the Mendelson case, which was the closest case they thought relevant to this discussion. And in Target Tech, I mean, the decision was based entirely on Mendelson, right? The discussion in Target was based in part on Mendelson, yes. And so first of all, the Target Tech, the most important thing to come out of Target Tech, it's very clear, the Target Tech district court judge did a fairness analysis. And the criticism on the appeal by the appellant was, this is a problem. He misapplied it. Beg your pardon? He misapplied. Yes, he shouldn't have applied it. He said the district court should not have applied a fairness principle to an express waiver. That's why it's wrong. And this court said no. He was right. They affirmed. And the problem that we have standing here today is we can't really identify all the variables and factors that went into the fairness analysis in Mendelson. It's a scant decision. It's a paragraph. It's three or four paragraphs. Most of it's procedural. But what's important- I'm talking about Target. About Target. You said Mendelson. I'm sorry. I'm sorry. No, you're right.  Yes. In the Target decision, there's not enough analysis to know. And Mendelson has not much more either. We don't know the context of what all went on. What we know in Mendelson, though, to the extent you want to go back to it, is in Mendelson, the state of mind of the individual who waived was at issue. This was a drug paraphernalia. It was a criminal statute. Not a drug. It was a bookmaking paraphernalia. And it was a clear issue, very big issue in the case, whether or not the defendant had the requisite state of mind for a criminal prosecution. And if you recall, it was software that could be used both legally and illegally for bookmaking. And there's evidence in the record that the defendant had tried to make sales to legitimate uses for bookmaking. Does the fact that that disclosure was made to a federal officer, does that invoke 502 in any way for you? It's not clear in the cases. We have not argued that. The question is whether it's judicial or extrajudicial, I guess, is the question. And one could make an argument that it is judicial. We have not advanced that, because we felt that there was a little bit of reach to say that. It arguably falls in the category. This court has said in In Re Target Technologies that it was an extrajudicial disclosure. So we've accepted that for the purposes of argument here, that the only two cases that you see here that in this body of law that we're looking at, other than Von Dulo and XYZ are extrajudicial, are Mendelson and In Re Target. But you've asked us in this case to reverse. And if the error is the district court didn't take into account the interests of fairness, sounds like an awfully factual sort of totality of the circumstances kind of analysis. Why would we, as an appellate court, do that in the first instance, especially when we're being asked to stand in the shoes of a different circuit, not even our own assessment of what is and is not fair? If the Ninth Circuit is really not decided on this, why wouldn't we at best give you a vacate and remand for the court to take into account issues of fairness? Very question on it. The reason why is because in this context, there's absolutely nothing on the other side of the balance. They've had a full opportunity through multiple briefs, multiple appeals, you've seen the bloody record down below. It's been litigated to death. We've gone through this entire process. As we stand here today, they have no evidence whatsoever in the record that suggests Why would they put evidence in the record when under Ninth Circuit law, it wasn't an issue? No, it was an issue. We argued initially that 502A applied. And we fought about 502A forever. There's some case law in the Ninth Circuit, district court law, District of Idaho, which suggested that 502A might apply. Because if you look at the statute, it said, in a proceeding. And we made the argument that in a proceeding based on the legislative background and the notes in your manual there, the federal rules background, it says, in connection with. And so we made the argument below that in connection with was sufficient, given there's only 14. How was the disclosure of the letter in connection with? Well, we made the argument. What do we find in the record that would show that it's in connection with? The fact, one is the passage of time. They had two years or three years of negotiation. They basically were going up to the point where we're going to file a lawsuit. We're trying to convince you that we really mean what we say. And they gave them a letter on the 14th of January and filed the lawsuit 15 days later. The context was, we're going to go into a lawsuit, and here's why. And the argument we made was, with a 15-day gap, that given the whole context, arguably it was in connection with. Should we be looking into the content of the letter itself in order to determine if there's in connection with? One could. And one could see that they're obviously talking about the merits of the case. Again, at this point, this is a footnote in our argument. This is not where we're putting our heft before this court. We argue this below. Well, you didn't argue here that 502 covers this. You're not making your interconnection. We're not making it here. We dropped it on a footnote. But it's relevant to Judge Moore's question. Why was the issue? It's been battled ad nauseum. And to this point, they had a full opportunity to document that, raise that issue. We fought it tooth and nail below. There is nothing on the other side of it. This letter was in settlement discussions. In fact, the real issue is, if you look at the XYZ case, the First Circuit, which is one of the two cases that expressly look at this, it's two circuit courts, Bonvillo and XYZ. And XYZ said, this is bad policy when you have an extrajudicial statement. We know what it is. All right, you know it. So the context here is. The short of the matter is that this is an unusual circumstance because we've already had the trial. The trial's over. The merits trial. The merits. We have not tried. In New York. There's no trial. There's a summary judgment proceeding. It's ended, right? Well, there's a judgment entered now. And we're now coming to see you again some months from now. That proceeding is over. In fact, this whole subpoena, there's a story behind it. If they had done this in the Second Circuit, we know they wouldn't have gotten it. But I mean, maybe they want to argue that they can show how they were somehow prejudiced in the New York action as a result of the waiver of the privilege. Well, they've had the opportunity to do that, Your Honor. And they haven't. To answer Judge Moore's questions and your point, they've had a full and fair opportunity to put on the record some harm. And there isn't because we have never put at issue. We, the plaintiff, has never put at mind the state of mind of their attorney in connection with this matter. It's not relevant. Counsel, you're in your rebuttal time. But I want to ask you one more question before you go, if you don't mind. Which is, you've also moved to ask us to overturn the sanctions. Suppose we agree with you and either reverse or vacate and remand. That certainly gives you a stronger case on the sanctions vis-a-vis the motion to compel. What were they, like $300,000 or something? $170,000. $170,000. OK. But at the same time, I don't, wouldn't we, again, vacate and remand that? And the reason I say is a court, even if it turns out to have wrongly ordered you to do something, a violation of a court order is still sanctionable, even if it turns out the court should never have asked you to do it in the first place. Isn't that right? It goes to the scope of review. It's Danover Review. And in this context, the court only, that court said that if this gets washed out, everything gets washed out. Judge Fogel said that he basically put this in place. You're going to bet on your position. If it comes to pass that you're right, then all the sanctions go away. Well, but that's, isn't that his decision to make, not ours? Well, I guess the issue for this court is whether or not, under the circumstances of Danover Review, whether the lawyers are ethically obligated to take this position to preserve the issue on appeal. No, is the question whether you're ethically, whether you're ethically obligated to take this position. If you had disclosed the information, couldn't the issue still have been brought on appeal somehow? Or do you think that you would have been appealing the issue of failure, that it shouldn't have been forced to disclose? I'm not following the question. OK, yeah, it was very poorly worded. That's why you didn't follow it. I guess the issue was, why wouldn't you have been able to somehow get this issue on appeal at a later time if you had complied with the order? Because we would have had to give over attorney-client information. We had to go back through our files and basically reveal communications we've held with our client. Catch out of the baggy. You can't get it back. You can't get it back. No, but then it couldn't have been used. You could have tried to bring an interlocutory appeal. We had three options, interlocutory appeal, which we tried and, unfortunately, was defective because it went to the magistrate judge instead of the judge. And that was really an issue of our fault, perhaps. When we put it in the file, it went to the court. It ended up with the magistrate judge. He said, I don't have jurisdiction. So we tried the interlocutory route. It was procedurally defective. And by the time we got back to it, the case had overtaken that. And we were basically in front of him on the merits. The other option was a writ. A mandate. And the writ was catch or catch can. A mandate. Right, and we could have done that. But the idea was. That's exactly like target tech. Yes. So you had two nice alternative ways to get up here rather than being condemnations. Well, I. Bottom line is it's your fault you ended up in contempt. Well, it's our fault? No, I think. Well, you didn't make the motions that you could have to get the issue before us without having disobeyed the court order. Well, we did make one motion. It was said to be procedurally defective. And by the time the thing got cleared up, we were in front of the judge on the merits anyway. The other option would have been a writ of mandamus. So if you're saying that we should penalize because a writ of mandamus, which is a discretionary writ, which may or may not have been granted. And a stare may or may not have been granted. We should have taken that chancy route on privilege information versus the sure route of protecting our client's rights on where we had to ethically protect them. Well, look at the law of our circuit in target tech and you realize you get an answer on the merits if you bring the mandamus. Well, how many writs does. We ordinarily explain why we deny a mandamus, which is not entitled to it. Well, if you look at the percentages on writs of mandamus, they're not very high. And we looked at it from the point of view of the importance of this issue and what's involved in terms of. This is trial counsel's communications with the lawyer. We thought it was important to preserve those rights. We tried the interlocutory, it didn't work. And we had one other option. Under these circumstances, given that Judge Fogle got to this in time, we went ahead and went on the merits of it. And under the circumstances, given what we're trying to do to preserve the rights of the client and ethically obligated to do so, we would submit that a proper reading of this would be to vacate the entire ruling, the contempt ruling, the sanctions ruling, and the waiver ruling, and flip it all the way back around and say, subpoena vacated. There's no waiver beyond what's been disclosed. Why don't you save the remaining 36 seconds for rebuttal, and I'll restore. Why don't we give you three minutes? Thank you, Your Honor. Good, okay. Good morning, Your Honors. James Lucas on behalf of LG Electronics Incorporated, LG Electronics USA Incorporated. May it please the court, counsel. I think Your Honors mentioned Mendelson. What we have here is we have an express waiver. It occurred before a litigation or a judicial proceeding consistent with Mendelson, Ninth Circuit law. And if the scope of the waiver of the privilege is restricted to the document itself, which would be the result presumably under Van Buelow and XYZ, how would your client be prejudiced? We would be prejudiced in the sense that because we have an express waiver, and just to make clear, Van Buelow and XYZ. I'll just answer the question. We'd be prejudiced in the sense that all you were going to get was the document itself, which you got. How is your client prejudiced? Because Weiland has now produced a document in an attempt to get my client to pay royalties, unfounded royalties we've now found. And by not doing that, you have to look at the time of the actual disclosure before litigation. And by not doing that, we're prejudiced in the sense that we don't get to see Why should you? They had you as a lawyer, right? So they had you as a lawyer. It's not like they had some obligation to rely on the letter that was produced to them from Weiland counsel. They had lawyers involved. So why in the world should they get to have discovery once it turns into a litigation into the internal deliberations between attorney and client over the letter? They're not going to use it at trial. Because that's consistent with Ninth Circuit law. That's why. Because Ninth Circuit law says, and I believe if there is a fairness analysis under express waiver conditions, it's got to be contained already in the fact that it's expressed by you taking, because they have full control of that privilege. Bidderker actually mentions this. Right, they have full control so they can clearly delineate what they're willing to waive and not willing to waive. And they exercise the full control by only waiving the privilege as to the letter. But Ninth Circuit law says the subject matter is not limited to just that letter. I'm asking you what advantage was gained from the letter. They didn't use it to try and persuade the fact finder of the truth of the matter in the letter. The LG did not settle at that point. I agree with that. But in the sense that, say you look at the fairness analysis, and I'm not saying there's an expressed fairness analysis in the express waiver case. The law is very consistent. You cannot just turn over that document and say, no, you can't use it as a sword and then keep it and shield every other document related to that. What if the document simply lays out litigation strategy? We go to trial, this is what we're going to say. And that's it. We went to trial. Is the document privileged? If it is privileged. Let's say it is, but is it limited just to the letter? No, it's not limited to the letter. It's limited to all communications documents related to the subject matter contained in that letter. You're talking about swords and shields, but this hasn't been presented in a litigation. They gave you a copy of something in the course of negotiations. Why does that waive such a broad privilege to let you get inside the head of their attorney? I'm just saying we have to follow Ninth Circuit law here, and I believe Mendelsohn is clear. That was an expressed waiver case, not an implied waiver case. According to Mendelsohn, because it actually specifically says it was a statement to an undercover detective prior to any charges being brought. So the at issue, there's no, nothing was at issue at the time of that disclosure. And that was followed up by In Re Targatech, as Judge Clevershire knows. What you have there is you have a patentee, much like Weiland here, turning over a, sending a sales letter pre-judicially, okay, to various third parties. Then the litigation happened, and the district court found, because of that letter that was turned over, pre-litigation, there was a subject matter waiver as to all of the subjects contained in that sales letter. How do you explain Akamai? How could a magistrate judge in the Central District of California have been so insane as to do what the magistrate did in Akamai? Akamai, very, not very touched on, I don't think in many of the briefs. Akamai is on all fours with this case. Isn't it? Excuse me? Am I wrong? Have I got the wrong case name? This is a magistrate decision in which there was a disclosure, and of course, the negotiations, and then there was a fairness hearing, and the decision was to limit the waiver. I know the case. I don't think it was brought up, though, by Townsend. It's a district court case. I think it relates to, there was an actual, I think they had an explicit, there was also an explicit statement where they said they wouldn't. Akamai Technologies against Digital, Iowa, May 2002. I mean, if you don't know it, maybe it's on all fours. I'm not finding it in the briefs. I don't care whether it's in the brief or not. It's the law. I think that's a non-binding district court decision. It does not change anything with respect to Mendelson, in Ray Target, by this court, and. . . What do you do with the footnote in Bideker? I think you're referring to the footnote in Hernandez, 2010. No, Bideker. In bank opinion, by the circuit. Well, Bideker makes very. . . The law on this express waiver law is not as settled as the state would have. That footnote relates to the fact that no longer is there a broad subject matter waiver or blanket waiver as to all attorney-client privilege. What they're saying is it's limited to the subject matter of the disclosed communications while consistent with all night circuit. . . Why did they cite Van Biel? Excuse me? Why did they cite Van Biel? Van Biel. . . Well, you have the footnote in front of you. No, I know the footnote. Van Biel deals with an implied waiver situation. It does. It's an implied waiver situation where the actual privilege holder. . . Implied waiver? I mean, Alan Dershowitz blew it in a book. No, it's definitely implied waiver. They specifically call it an implied waiver in Van Biel. And what's interesting about Van Biel is, and we mentioned this case, in Ray John Doe Corp. . . Three years before, four years before. . . By the second circuit. You conceded an implied waiver. You get a fairness hearing. There's an explicit fairness analysis. In the ninth circuit. . . You know, this is Biddicker. You get yourself a fairness consideration with an implied waiver. I believe that's correct. And under 502, you get with an express waiver if it's in a proceeding, right? That's correct. What conceivable policy reason would you advertise to deny a fairness hearing with an extrajudicial waiver? First, I think that's consistent with federal. . . I don't care. I'm asking you. . . Policy reason. I'm asking you. . . You're in law school. I'm asking you to stand up and tell me what conceivable policy reason would you deny a fairness inquiry with an express non-judicial waiver? I think you first have to go to express. You have full control of that waiver regardless of whether it's pre-judicial or judicial. Why can't we decide that a fairness hearing is necessary in this case? I mean, Mendelson was an extrajudicial case involving an express waiver, and they didn't decide whether fairness applied or not. They did not. That's correct. Okay, so when it comes down to the issue of fairness, there is no case, there is no precedent where you have extrajudicial express waiver whether a fairness hearing is necessary or not. Why should we not have the basis to decide along those lines? Just want to make clear, there is no Ninth Circuit case applying a fairness analysis in an express waiver situation. I agree with that, and I think you should not require one because it would be inconsistent with Ninth Circuit law. Does that answer your question? And secondly, if there is a fairness analysis that the Ninth Circuit does apply in express waivers, I think it's intrinsic. It's already built in. How about the argument that the disclosure was made immediately prior to the filing of litigation, the disclosure involves litigation strategy, here's our case, here's what we would rely on, here's what we would say in court. You're asking a hypothetical there? Yes. And you're asking why, in fairness, that should be extended, the waiver should be extended. I think because it was expressed, and in essence, I don't know what situation it was brought forward, you have to look at why were they issuing this, why were they waiving the privilege? Why were they expressly doing it? There's reasons for that. They were using it as a sword because if we have to go to the fairness analysis, we have to look at implied waiver cases, and they're using it as a sword, and Ninth Circuit law is very consistent on that. You have to get the other subject matters, excuse me, you have to get other documents related to the subject matters disclosed. That's just the way Ninth Circuit waiver law is applied. That's fair. That is fair. Now, opposing counsel suggested that if we think a fairness inquiry should have taken place, if we think the Ninth Circuit would conclude that a fairness inquiry should take place, what should happen? Should we reverse outright or vacate and remand? Your opposing counsel's argument to us was there's no reason to vacate and remand. They had many opportunities and never put any evidence that would suggest fairness would ever go in their favor in this case. I think even if you decide that a fairness analysis is required, an explicit fairness analysis, I think in the record, there is enough there that the court was very clear that, look, this was done as an attempt to coerce another party to pay unfounded royalties, whether it be pre-litigation or during litigation, and it would be only fair based on that that the other side is able to see these other documents on related subject matters. Why? Did they have counsel at this stage of the process? Were you involved or was counsel involved? No, that's another point. Did LG have any counsel involved? No, see, LG did not have counsel at this point. This was an attempt to, we believe, an attempt to take an Asian company and try to influence them to pay unfounded royalties, knowing that they were not represented by counsel at that point. These letters were turned over to an exact LG representatives, not lawyers, not US lawyers. We looked at when we presented this argument, and the court found that, in essence, they thought by providing a US law firm. Where did the court find all this? I mean, this is in the record in the sense that. You keep talking about the court finding. I read Judge Fogle's opinion. I didn't see any of that in his opinion. You got to understand, the magistrate held most of it. I read what Judge McGrover said. I think he recognized that this opinion was turned over to LG, and I think there is something in the record that they were not represented at that point, and it was an attempt to make them pay unfounded royalties. I think that's in the record. What's unfounded? That's a lot of legal conclusions. I mean, they weren't. Pay royalties. Of course. You're twisting the facts here. Well, it was an attempt to. If Whelan had come itself, and if Whelan's business person had memorized the letter and sat down with your client and had dictated the letter, but not saying I got it from the lawyer, it's given all the same information, right? Correct. Would there be a waiver of the attorney-client privilege? It's difficult. It doesn't explicitly say. What you're trying to get is a real world of a business negotiation. Somebody goes and they've got a patent, and whether or not they've had a license before or not, they say, I'd like you to take a license. I think you're infringing. Right. In most cases, a responsible business person isn't going to go to an adversary and make that allegation unless there's something behind it. Sure. But usually what's behind it is an opinion of their counsel. Right. But we're talking about more than just, you know, we think you infringed. I mean, this opinion details. I'm coming to what Judge Raynor was saying, the context in which this disclosure was made. I mean, you know, everybody knows that public policy favors the extrajudicial resolution of disputes. Everybody favors not, you know, not going to war, not going to file a DJ action in New York or whatever you did, resolve it. So what happened here is that, you know, Wheelan's counsel comes and says, here's our position. We think you should be paying us some royalties. And don't we want to encourage that conversation? Well, I mean, that could be the same for litigation, an actual litigation. But the point is I think, and I hope this answers your question. They didn't do that. They actually turned over a fully, a full legal opinion containing legal analysis, clearly attorney-client privilege information. They're not trying to protect the letter. They realize, I mean, they make an argument in their brief, which I mean, just wasted paper. I mean, they've got to cough up the letter. There's no question about that. Unless you can show that there's harm to you, why should the waiver go beyond the text of the letter? Because I think this court has to file ninth circuit law. It has to file a ninth circuit law in Mendelsohn. In Mendelsohn. And in Ray Target. It's consistent with that. I mean, I think. For Target Tech, there was a, I was on that case. And they said, well, there was a misapplication of the fairness doctrine. Well, I believe they continue to argue fairness up to. Well, no, they continue to argue fairness up to this court. And you didn't discuss, if you look at that opinion, there's no fairness analysis in Ray Target because it was an express waiver. Contrary to the briefs. Well, there's no harm in there having been. I mean, the magistrate judges in the circuit are regularly making fairness determinations on express waiver. If they are doing that, it's because it's intrinsic in an express waiver. Because as Bittker says, you have full control. There's no involvement with the courts in the situation of an implied or an at issue. You have full control of that waiver. And you've chosen to waive that privilege with respect to communications. Doesn't your argument that, and you keep referring this to as a spear. And I see that in my mind. But once you go down that road, I mean, doesn't that argument beg a fairness analysis? Well, as I said. I mean, because you're saying you were prejudiced or you were injured or this caused you some sort of harm. What is it? I mean, Judge Moore has asked you this repeatedly and I still haven't heard you answer that question. I think the harm is not being able to see. They've shown, obviously, information, attorney-client information that's positive to them. And we have not seen the negative stuff. For instance, did they, could they actually, did they think they have a rule 11 basis to bring their claims? Did they make claims of fraud? Did they have the basis to make those claims? We're not able to see that. And I want to make sure you understand that when I say, when we talk about Swerd and Shield, I'm only doing that conditionally based on you're We believe that no specific explicit fairness analysis needs to be done under Ninth Circuit law for an express way. Your basic argument is that it is impermissible. It would have been reversible error. You're telling me that if the magistrate judge here conducted a fairness hearing, right? You would be up here on appeal saying as a matter of law, that was incorrect. A fairness hearing is never permissible with an express, extrajudicial waiver. I'm not saying I'd be up here, but there's a chance, yes. I would say it's not required. But is there a precedent in the Ninth Circuit that would prohibit that? I mean expressly prohibits the fairness inquiry in that type of situation. Well, I mean the perfect example. Do you answer that question? I do not think so. But the perfect example is Chevron versus Pennzoil, where they had an expressed and an implied waiver. And when they talk about the expressed, they do not apply a fairness analysis. And then when they go on to the implied, they specifically talk about a fairness analysis. That's a Ninth Circuit case. You realize in the briefing in that case, there's a lot of discussion about Van Bulo and about how Van Bulo was considered by the magistrate judge. Unfortunately, we don't have the ruling of the district court judge. But the chicken tracks in the dust in that case suggest that there was a fairness inquiry on the express waiver. I did not know that. Go read the briefs. Okay. Look for those chicken tracks. Do you have a final thought? It's not done. I think it's important for us to understand that you're saying that under Ninth Circuit law, had there been a fairness hearing, that would have been reversible error as a matter of law. A person that coughs up the privilege extrajudicially, you know, express waiver, is never entitled to a fairness consideration. I think that's correct, yes. Okay. I just want to make sure you understand what I mean. Oh, but wait a minute. You think that's correct, but there's no precedent in the Ninth Circuit that says that's correct. There's no precedent saying otherwise. In essence, all the cases that we've cited in the Ninth Circuit . . . It's up for us. Excuse me? It's up for us to decide. We are strapping on our Ninth Circuit hats. I don't think it's up for . . . In response to your argument that never, ever, ever, can a magistrate judge have a fairness hearing with an express extrajudicial waiver. I . . . Never. I think it's inconsistent with Ninth Circuit law. They just do not do it. And I think if there was a fairness analysis, it's built in. It's built in because you have the full control of that privilege. That's probably why they don't do it. But you're saying it's always fair to require a subject matter disclosure when you . . . Expressly do it, yes. I believe that's correct. Even though 502 says that ain't the case at trial. That's correct, but that does not apply under . . . And so, we have a different rule. We have a more generous rule with regard to if you're in a proceeding than if you're outside the proceeding. I agree with that. But there's no policy reason for that, right? Well, the policy reason, I think, if you look at 502, the basis for 502 had to do with discovery disputes. 502 says if you get on the stand and you blow your privilege, like, you know, you stand up and you say, guess what? You know, I had ineffective assistance of counsel when I got convicted of murder, right? You waive that privilege yourself and you get a fairness hearing. I think that's correct. But if you'd done it the day before trial, you know, gone out in public and said you wouldn't get a fairness hearing. But it's also interesting on 502, though, because it actually copies the rule of completeness law. It's the ought in fairness, and it's questionable as to what that really – what is that really talking about? In fairness to the other side, I think we ought to let them have the rebuttal. Thank you very much. Okay, thank you, counsel. So, I'm going to give you four minutes, because that would make your time equal with his time. Hopefully it won't go too far beyond that, but we'll see. If you need it. If I need it, yes. Thank you. So, picking up the last point first. Absolutely categorically disagree with what he said. There's no way in the world that the Ninth Circuit would say that it would be erroneous to do a fairness analysis. Why is that the case? First of all, this court looked at in-ray target technologies and saw a district court do a fairness analysis. It's explicit in the opinion and did not reverse on that ground. In fact, affirmed. So we know this court has already looked at Ninth Circuit law, saw a fairness analysis done, and said that's perfectly fine. Point number one. Point number two. Look at Bideker. Look at that footnote. As Judge Clevenger, as you've noted several times, Chief Judge Kaczynski looks at the law, says in that category of the express waiver, that has not been decided. The law is unclear. But he cites Von Bulow, and he cites a treatise that we have cited, indicating the law is evolving in this area and moving toward a fairness analysis in all contexts. That's 2003. Fast forward to 2008. What does Congress do? Congress amends the federal rule of evidence that applies in every case that we're involved in, and says if there is a judicial proceeding and there is a waiver of attorney-client privileges that's expressed, there must be a fairness analysis. So what would the Ninth Circuit do? Look at what happened in Bideker. Look at what happened with the federal rules. Look at array-target technologies. Of course they would apply a fairness analysis. Look at the logic behind it, the rationale. As you've indicated, you're talking about a 15-days difference between the time the lawsuit was filed and the time of this letter. As if the world changes in 15 days? There's no rationale for having a different standard to be applied. Point number two, with respect to the issue of prejudice, which you've spent a fair amount of time trying to elicit from counsel, the point I would want to make is there is no reason to remand this. The court has lots of authority to decide things up here when there's no purpose, when it would be futile to remand. Judge Fogle, as you know, has left the bench. He's now head of the Federal Judicial Center. He's where this case would go. But before this case got here... I'm sure they could find another judge down there to take it. But not Judge Fogle, who had his rationale and analysis and explained explicitly in the record, the one hearing I went to was the last hearing, where Judge Fogle said, I'm going to do this because I think I need to do something, but I'm going to turn this all over if it comes back the way you say it's going to come back. So it seems to me that the magistrate did hear fairness arguments. Absolutely. And said, I'm not going to apply a fairness analysis. And in our standard review, there is an abuse of discretion on that decision. And we're faced with our case law regarding discretion afforded to trial courts in their decisions that involve procedure. How do you overcome that? Because the issue of whether there's a fairness analysis is not an abuse of discretion standard. It's the scope of review with respect to the privilege. The scope of the waiver. That issue is impacted by the standard you apply, obviously. The fairness principle is part of the legal standard. It's a de novo question. Well, so what the legal standard should be is a de novo question, but not how the legal standard applies to a given set of facts. But he never applied the right legal standards, so we don't even see that. Which is why it's kind of difficult for us to do it on appeal. But, yeah, I hear you, Your Honor. I hear you on that point. But the point is, when there's ample opportunity, you asked him for five minutes this question. He couldn't answer it. There is no prejudice. So you're not going to be greedy. You'd rather have a remand than an affirmance. Well, he didn't even agree with that. He wants to fight it here. Let's fight it here. Let's have this court decide it. There's no reason to remand this. I understand where you're coming from, Your Honor, but there's plenty of precedent in this court. His best hook is his Rule 11 argument. Well, there's no Rule 11 issue in the case at this point. Well, no. Well, wait a minute. There's always a Rule 11 issue, right? In every case, you could say that. But we have to put something at issue. Look at the precedent here. You want to follow the Ninth Circuit law? Well, he hasn't had a chance to run that up the flagpole. Well, if he's going to make it up here, then he doesn't deserve it. I mean, he's been down here in five or six hearings making this argument. We've argued fairness till the cows come home below. There is no argument why there's any prejudice on either side. You've hit every nail on the head. The XYZ case talks about this. Von Bulow talks about this. It's clear that in this circumstance, an extrajudicial, outside judicial process disclosure, that's not at all brought into the judicial process. There's no reason in heck why that should be something that this court would be worried about, or the Ninth Circuit would be worried about, under its precedent. And given the record that we have, where there's clearly no prejudice, ample opportunity to discuss it, thoroughly litigated, briefed, argued, there's no reason to send this back down again to see if they can conjure up something more on this issue when they have full opportunity to look. I think we have both counsel's arguments well in hand. And I thank them for very good arguments. Concluded for today. All rise. The Honorable Court is adjourned from day to day.